<u>NOT FOR PUBLICATION</u>

**<u>UNITED STATES DISTRICT COURT</u>**
**<u>FOR THE DISTRICT OF NEW JERSEY</u>**

| | | |
|---|---|---|
| _____ | : | |
| B.C. and L.T. o/b/o C.C., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 06-5410 (JAG) |
| v. | : | |
| | : | **OPINION** |
| LONG HILL TOWNSHIP BOARD OF | : | |
| EDUCATION, SUPERINTENDENT ART | : | |
| DiBENEDETTO, PRINCIPAL JOANNA | : | |
| HUGHES, RACHEL PETR, and JOHN / | : | |
| JANE DOES I-X, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on motions, filed by the defendants, Long Hill

Township Board of Education, ("Board"), Art DiBenedetto ("Mr. DiBenedetto"), and Joanna

Hughes ("Ms. Hughes"), (collectively, "Defendants"),[1] against the plaintiffs, B.C. and L.T.

("Plaintiffs"), for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), and for sanctions,

pursuant to FED. R. CIV. P. 11(c) ("Rule 11 sanctions"). For the reasons set forth below,

Defendants' motion for judgment on the pleadings is granted regarding Plaintiffs' sole federal

---

[1] Plaintiffs filed a stipulation, dated June 8, 2007, voluntarily dismissing, with prejudice, all claims asserted against Defendant Rachel Petr ("Ms. Petr").

claim, the section 1983 claim, against Mr. DiBenedetto and Ms. Hughes.[2]  Defendants' motion for sanctions is denied.

## I.   FACTUAL BACKGROUND[3]

Plaintiffs bring this action on behalf of their minor son, C.C.  (Compl. ¶ 1.)  C.C. attended the Board's Gillette school, located in the State of New Jersey.  (Id. ¶ 3.)  In the fall of 2003, C.C. was enrolled in the first grade.  (Id. ¶ 4.)  B.C., C.C.'s father, is a public school teacher, and L.T., C.C.'s mother, is a former teacher with a private practice in speech pathology.  (Id.)  Ms. Hughes is the principal of the Gillette school.  (Id. ¶ 6.)  Mr. DiBenedetto is the Board's superintendent.  (Id. ¶ 5.)  He is responsible for supervising the staff and students at the Gillette School.  (Id.)  Rachel Petr ("Ms. Petr") was C.C.'s teacher for the first two months he spent in the first grade.  (Id. ¶ 7.)

Plaintiffs assert that before attending Ms. Petr's first grade class, C.C. had been excited about learning.  (Id. ¶¶ 8-9.)  The summer after C.C. completed a half-day kindergarten program at the Gillette School, he read sixty books and expressed a desire to attend a full-day program for the first grade.  (Id.)  Shortly after starting the first grade, however, C.C. told his parents that class was "boring."  (Id. ¶ 11.)  Plaintiffs subsequently met with Ms. Petr on several occasions to tell her that C.C. was bored in her classroom, and to suggest that she "challenge C.C. as the coursework seemed to be too easy for him."  (Id. ¶ 12.)  Plaintiffs allege that, thereafter, Ms. Petr became very critical of C.C.'s academic performance.  (Id. ¶¶ 13-15.)  Ms. Petr verbally

---

[2]   As discussed below, this Court declines supplemental jurisdiction over Plaintiffs' remaining state law claims.

[3]   The allegations set forth in this Opinion are drawn from the Complaint and the exhibits incorporated by reference.

reprimanded C.C. in front of his classmates, even berating him for failing to capitalize one letter in a paper he wrote for class.  (Id. ¶ 13.)  C.C. soon began to refuse to board the school bus.  (Id. ¶ 15.)  Plaintiffs would often bring C.C. to school as he screamed and cried.  (Id.)

Upon Plaintiffs' request for Ms. Hughes' assistance, she "offered to assist in addressing C.C.'s emerging school refusal/phobia, by meeting him every morning, calming and reassuring him, and then escorting him personally to his classroom."  (Id. ¶ 16.)  When Plaintiffs asked Ms. Hughes about C.C.'s "increasing difficulties," Ms. Hughes "assured them that C.C. was 'fine.'"  (Id. ¶ 19.)  Plaintiffs were not aware, until the summer after C.C. completed the second grade, that C.C. had been left alone in Ms. Hughes' office, and that Ms. Hughes had denied his requests to see or speak to his parents.  (Id. ¶¶ 18-19.)  Plaintiffs assert that Mr. DiBenedetto failed to supervise Ms. Hughes or to protect C.C. from this treatment.  (Id. ¶¶ 60, 63.)

During the fall semester of the 2003-2004 school year, a learning consultant for the Board "observed C.C. in Ms. Petr's class" and told Plaintiffs that "Ms. Petr *was* singling-out C.C. and treating him in an abusive way."  (Id. ¶ 20 (emphasis in original).)  On November 11, 2003, Plaintiffs met with Mr. DiBenedetto, and he was "dismissive" of their concerns.  (Id. ¶ 21.)  Plaintiffs allege that Mr. DiBenedetto used an "aggressive tone" and offered to "take C.C. alone for a drive in his truck to have a 'heart-to-heart' with C.C."  (Id. ¶ 22.)  The following day, after speaking with Plaintiffs and "hearing C.C.'s explanation," Mr. DiBenedetto agreed to assign C.C. to another classroom for the remainder of first grade.  (Id. ¶¶ 22-23.)

Plaintiffs allege that, due to Defendants' conduct or failures to act, C.C. exhibits physical and emotional symptoms related to fear and anxiety.  (Id. ¶ 28.)  C.C. suffers from various physical and emotional conditions, including, frequent headaches or migraines, vomiting, panic

attacks, and general anxiety, along with night terrors and sleeplessness.  (Id. ¶¶ 24, 39, 41.)  C.C. underwent several medical examinations to discover the source of his headaches; those examinations included x-rays of his head, CAT Scans, MRIs, blood work, and vision exams.  (Id. ¶¶ 25-27.)  Plaintiffs allege that "[a]ll [of] the tests returned negative" and his vision is normal." (Id.)  Following receipt of the test results, Plaintiffs began utilizing a headache chart to track C.C.'s migraines in relation to C.C.'s school experiences.  (Id. Ex. A.)

In December of 2003, C.C. began to see a child psychologist, Dr. Diane Hrobsky.  (Id. ¶ 29).  Dr. Hrobsky "reaffirmed that C.C.'s problems began with his negative experiences in Ms. Petr's class."  (Id.)  On April 21, 2004, Dr. Hrobsky sent a letter to Ms. Hughes and C.C.'s new teacher, offering recommendations for C.C. and suggesting that C.C. be shielded from reminders of his previous experiences in Ms. Petr's class.  (Id. Ex. F.)  Plaintiffs assert that C.C. experienced headaches and burst into tears when Ms. Petr later visited his new first grade class on two occasions.  (Id. ¶¶ 35, 37.)

Plaintiffs allege that, overall, the intensity of C.C.'s emotional and physical symptoms decreased after Mr. DiBenedetto assigned him to another class, but that the symptoms persisted into the 2005-2006 school year.  (Id. ¶¶ 41, 48.)  Plaintiffs allege that C.C. continues to experience anxiety due to a fear of both school and unfamiliar situations.  (Id. ¶ 28).[4]

In 2005, Dr. Hrobsky referred C.C. to a psychiatrist, Dr. Karen Meiselas.  (Id. ¶ 46.)  Following an examination on July 28, 2005, Dr. Meiselas diagnosed C.C. with "Post Traumatic Stress Disorder, Panic Disorder, and Anxiety Disorder."  (Id. Exh. I.)

---

[4]  Plaintiffs enrolled C.C. in "the Albrook School, a private Montessori school" for the second and third grade.  (Id. ¶¶ 41, 47.)

## II.   PROCEDURAL POSTURE

Plaintiffs filed the Complaint in the Superior Court of New Jersey, Law Division, Morris County on September 20, 2006.  In the Complaint, Plaintiffs allege violations of C.C.'s constitutional rights, pursuant to 42 U.S.C. §§ 1981 and 1983 (Count VI),[5] along with state law claims for various tortious conduct (Counts I-V, and VII).[6]

Defendants filed a Notice of Removal (Docket Entry No. 1) with this Court on November 9, 2006, pursuant to 42 U.S.C. § 1441 (b) and (c).  On April 20, 2007, Defendants filed the motion for judgment on the pleadings.  By stipulation filed October 15, 2007, Plaintiffs voluntarily dismissed the Section 1981 claim (Docket Entry No. 24) against Ms. Hughes and Mr. DiBenedetto.[7]

On June 1, 2007, Defendants moved for Rule 11 sanctions on the basis that Plaintiffs cannot satisfy any element of any cause of action alleged in the Complaint.

Defendants' motion for judgment on the pleadings is granted, as to Plaintiffs' Section 1983 claim.  Defendants' motion for sanctions is denied.

---

[5]  Plaintiffs assert Count VI against Ms. Petr, Ms. Hughes, and Mr. DiBenedetto.

[6]  Plaintiffs' other six causes of action in the Complaint are as follows:  Count I, false imprisonment (against Ms. Hughes); Count II, intentional infliction of emotional distress (against Ms. Petr and Ms. Hughes); Count III, assault and battery (against Ms. Hughes); Count IV, negligence (against Ms. Petr, Ms. Hughes, and Mr. DiBenedetto); Count V, negligent hiring (against the Board); and Count VII, vicarious liability (against the Board).

[7]  Docket Entry No. 23 incorrectly states that Plaintiffs dismissed the section 1983 claim. Docket Entry No. 24, in error, states that the stipulation dismissed the entire action against Defendants.  The attached stipulation, signed by the parties and this Court, identifies Plaintiffs' section 1981 claim as the dismissed claim.  This Court held a telephone conference (Docket Entry No. 25) with the parties on February 11, 2008.  It became apparent at that time that Defendants' motion for judgment on the pleadings remained pending.

5

### III.   STANDARD OF REVIEW

A motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), may be filed after a defendant has filed an answer to the complaint.  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 n.1 (3d Cir. 2004).  The standard for a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as that for a motion to dismiss under FED. R. CIV. P. 12(b).  See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards.").

 "[A] complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal et al., 129 S.Ct. 1937, 1940 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); FED. R. CIV. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citations omitted).  To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 554 (internal citations omitted).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.

6

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  Yet, a

court may "choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Iqbal, 129 S.Ct. at 1950.  A court will

not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal

conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d

902, 906 n.8 (3d Cir. 1997).  "[D]etermining whether a complaint states a plausible claim is

context-specific, requiring the reviewing court to draw on its experience and common sense."

Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556).  "The defendant bears the burden of

showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir.

2005).

 In reviewing a motion to dismiss, a court may "consider the allegations contained in the

complaint, exhibits attached to the complaint and matters of public record.  Pittsburgh v. W.

Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R.

Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

## IV.   SECTION 1983 ACTIONS

 A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his

constitutional rights.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage,
> of any State or Territory . . . subjects, or causes to be subjected any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper proceeding for
> redress . . .

42 U.S.C. § 1983.

"By its own terms, the statute does not create substantive rights.  Instead, it only provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Brown v. Pennsylvania Dep't of Health Emergency Med. Servs., 318 F.3d 473, 477 (3d Cir. 2003).

Therefore, to prevail on a section 1983 claim, a plaintiff must, first, allege the violation of a right secured by the Constitution or laws of the United States, and second, must allege that the deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

To establish a claim for deprivation of a protected liberty interest under the substantive component of the Due Process Clause, a plaintiff must allege conduct that "exceed[s] negligence or deliberate indifference, and reach[es] a level of gross negligence or arbitrariness.  Studli v. Children & Youth & Families Cent. Reg'l Office, No. 07-4831, 2009 U.S. App. LEXIS 20218, at *10 (3d Cir. Sept. 9, 2009) (quoting County of Sacremento v. Lewis, 523 U.S. 833, 849 (1998)) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").  The conduct alleged must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-427 (3d Cir. 2003).

## V.   ANALYSIS

### A.  Section 1983

Plaintiffs argue that C.C. was deprived of his liberty under the Fourteenth Amendment of the Constitution of the United States.  Plaintiffs assert that Ms. Hughes violated C.C.'s right to personal bodily integrity by "confining" C.C. in her office.  (Plaintiffs' Brief in Opposition to

Defendants' Motion for Judgment on the Pleadings ("Pls. Br.") 5.)  Plaintiffs contend that Ms. Hughes' actions constitute "forced isolation" and "solitary confinement." (Id. 7.)  Plaintiffs do not argue that Mr. DiBenedetto participated in this confinement; however, they assert a section 1983 claim against Mr. DiBenedetto as well.

Plaintiffs rely on two cases to support their section 1983 claim for deprivation of liberty: Milonas v. Williams, 691 F.2d 931 (10th Cir. 1982) and Pena v. New York State Division for Youth, 419 F. Supp. 203 (S.D.N.Y. 1976).  Both cases are inapposite, involving strikingly dissimilar facts than those alleged here.[8]

Milonas involved a class action against a private school for young boys with "behavioral problems."  Id. at 934.  The plaintiffs challenged several disciplinary practices on the basis that the policies violated, inter alia, the plaintiffs' liberty interests secured under the Fourteenth Amendment.  Id.  One of the challenged practices involved the placement of students in isolation "rooms [that] were approximately 4' X 8' X 9', were carpeted, contained no furniture, and had one small window in the door."  Id. at 941.  "Individual students were placed in the rooms as *punishment* for the violation of school rules or when the boys were believed to be emotionally or physically out of control."  Id. (emphasis added).  The court in Milonas affirmed the lower court's issuance of a permanent injunction prohibiting the school's use of isolation rooms for students who were emotionally, but not physically, out of control.  Id. at 941-43.

---

[8]  In their opposition brief, Plaintiffs cite additional cases supporting their contention that physical injury is not required to establish a deprivation of C.C.'s personal bodily integrity.  (Pls. Br. 5-6.)  Defendants contend that they have not argued that a physical injury is a requirement, and that, therefore, Plaintiffs' discussion of these cases is irrelevant.  (Defendants' Reply in Support of Motion for Judgment on the Pleadings 3-4.)  This Court does not make any determinations in this regard because the conduct Plaintiffs allege is insufficient to support a section 1983 claim for other reasons.

Pena involved a training center for young boys "who have been adjudicated delinquent in civil proceedings in [state family court]." 419 F. Supp. at 206. The court concluded that "the boys placed [in the training center] have a constitutional right to rehabilitative treatment" because the training center is "part of the juvenile justice system" Id. The court went on to specifically state that it did not "conclude that in every instance the use of isolation . . . to control excited behavior in children [is] unconstitutional." Id. at 207. Rather, the court held that confinement solely for purposes of *punishment* was prohibited. Id. (emphasis added).[9]

Pena and Milonas involved the use of certain conditions of isolation to punish or discipline children. Plaintiffs fail to explain how the facts alleged in the Complaint are at all applicable to the factual scenarios in the cases cited. Plaintiffs merely state, in conclusory fashion, that, "like [the plaintiffs] in Pena and Milonas, Plaintiffs assert that C.C. was subjected to isolation which resulted in severe emotional distress." (Pls. Br. 7.)

Plaintiffs' allegations fail to create the inference that C.C. was confined. In any case, if C.C. was confined, there is no basis to infer that he was confined for punitive reasons. The facts do not indicate that Ms. Hughes prevented C.C. from leaving the office, or that he wanted to leave. Plaintiffs also do not allege that Ms. Hughes used isolation as a form of punishment or that she refused to permit C.C. to talk to his parents because he intended to specifically object to being left alone in the principal's office. Plaintiffs have not asserted any challenge to the conditions of the purported confinement.

---

[9]  The court in Pena enjoined the training center from violating its own room confinement standards. Id. at 210. The center defined "room confinement" as "confinement of a child in a room, including the child's own room, when locked or when the child is authoritatively told not to leave." Id. The standards required that the room be furnished, that an adult would visit once a day, and that the confinement period would persist no longer than twenty-four hours. Id.

Plaintiffs are entitled to their view that it was not appropriate for Ms. Hughes to leave C.C. alone in her office, to cry himself to sleep during his emotional episodes, for any amount of time, without permitting him to speak to or see his parents, and without alerting them.

For purposes of establishing a section 1983 claim, however, this Court must distinguish between actions that amount to constitutional deprivations of rights and those that do not. The facts, as alleged in the Complaint, do not rise to the level of a deprivation of C.C.'s personal bodily integrity under the Fourteenth Amendment.[10] The conduct alleged is not conscience-shocking. Plaintiffs' section 1983 claim against Ms. Hughes and Mr. DiBenedetto must fail.

Thus, Defendants' motion for judgment on the pleadings is granted as to the section 1983 claim.

**B.  State Law Claims**

Defendants request that this Court exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Supplemental jurisdiction (formerly "pendent jurisdiction") is the court's ability to hear and resolve a jurisdictionally insufficient claim that arises from the same or related transaction or occurrence of a jurisdictionally sufficient claim. See 28 U.S.C. § 1367(a). It is proper for a federal court to exercise supplemental jurisdiction when the federal and state claims "derive from a common nucleus of operative facts" such that the plaintiff would ordinarily be expected to bring all the claims in a single judicial proceeding. United Mine

---

[10]  Because Plaintiffs failed to establish the violation of a federally protected right, this Court does not discuss Defendants' contention that qualified immunity attaches to shield the Defendants from liability. See Miller v. City of Phil., 174 F.3d 368, 374 (3d Cir. 1999) (A court should "ascertain whether a constitutional violation has been alleged *before* determining if qualified immunity is available.") (emphasis in original); Torres v. U.S., 200 F.3d 179, 184 (3d Cir. 1999).

Workers v. Gibbs, 383 U.S. 715 (1966).  The federal claim must have "substance sufficient to confer subject matter jurisdiction on the court."  Id.

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction.'"  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 165 (1997) (quoting the federal question jurisdiction statute, 28 U.S.C § 1441(a)).

"[W]here the claim over which the district court had original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Huertas v. Musco, 204 F.3d 109, 123 (3d Cir. 2000); see 28 U.S.C. §1367 (c)(3).

All federal claims in Plaintiffs' complaint have been dismissed.  Defendants argue that this Court should exercise supplemental jurisdiction because "the state law claims arise from the same common nucleus of facts as Plaintiffs' federal claims."  (Defendants' Brief in Support of Motion for Judgment on the Pleadings ("Defs. Br.") 17.)  Besides stating that this Court should adjudicate Plaintiffs' state law claims "ons the merits in the interests of judicial economy, convenience and fairness to the litigants," (id.), Defendants have not articulated any specific factors warranting the exercise of jurisdiction.  Accordingly, this Court declines, in its discretion, to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts I-V, and VII).

## C.  Attorney's Fees under Section 1988

Section 1988 provides in pertinent part: "In any action or proceeding to enforce a

provision of section [1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "[A] prevailing defendant is entitled to attorney's fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation . . . .'" Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001) (quoting Christiansburg Garment Co, v. EEOC, 434 U.S. 412, 416-17, 421 (1978)). "Nevertheless, it is not necessary that the prevailing defendant establish that the plaintiff had subjective bad faith in bringing the action in order to recover attorney's fees.  Rather, the relevant standard is objective." Id. (citing Hughes v. Rowe, 449 U.S. 5, 14 (1980)).

        To determine the appropriateness of such an award, a court may consider:  "whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial[,] or the case continued until a trial on the merits." Id.  The court may also consider "whether the question in issue was one of first impression requiring judicial resolution," and whether "the controversy is based sufficiently upon a real threat of injury to the plaintiff." Id.  A court decides to award attorney's fees on a "case-by-case basis." E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir. 1997).

        Defendants argue that attorney's fees are warranted on the grounds that Plaintiffs failed to make out their prima facie case, that the claim is not one of first impression, and that there was no real threat of injury to Plaintiffs.  (Defs. Br. 25-26.)  Plaintiffs counter and claim that "C.C. was severely harmed by the actions of Defendants."  (Pls. Br. 25.)  Plaintiffs assert that "[a]ll of Plaintiffs' claims are factually based and properly pled."  (Id. 20.)

        Defendants correctly observe that several factors weigh in their favor.  Plaintiffs'

13

evidentiary submission, however, aptly illustrates the conditions C.C. suffers.  Plaintiffs' efforts to obtain additional support for C.C. are also well-documented.  This Court cannot conclude that Plaintiffs' action is "without foundation."  See Weisberg v. Riverside Township Bd. of Educ., 272 F. App'x 170, 173 (3d Cir. 2008).[11]  Accordingly, Defendants' request for attorney's fees is denied.

### D.  Rule 11 Sanctions

"Rule 11 authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g., 'to harass or to cause unnecessary delay or needless increase in the cost of litigation.'"  Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995) (citing Landon v. Hunt, 938 F.2d 450, 452 (3d Cir. 1991).  Sanctions are warranted "only in the 'exceptional circumstance' where a claim or motion is patently [without merit] or frivolous."  Ford Motor Co. v. Summit Motor Products. Inc., 930 F.2d 277, 289 (3d Cir. 1991), cert. denied, 502 U.S. 939 (1991).  Sanctions are appropriate only if "the filing of the complaint constituted abusive litigation or misuse of the court's process."  Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994).  "[T]he mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a rule violation."  Id. at 62.

The standard for imposing Rule 11 sanctions is one based upon objective reasonableness under the circumstances.  Bad faith on the part of the plaintiff is not required.  Martin v. Brown,

---

[11]  The court in Weisberg denied the defendants' motion for attorney's fees although "the evidence that [the plaintiff] presented, [was] inadequate . . . to support even a prima facie case for disability."  242 F. App'x 173.  The court reasoned that the plaintiff "illustrated that he likely does, in fact, suffer from some sort of medical condition affecting his 'concentration, vision, mood and energy' and that his claim cannot therefore be said to be wholly "without foundation." Id.

63 F.3d 1252, 1264 (3d Cir. 1995) (citations omitted).  Moreover, subjective good faith on the part of the attorney is insufficient to avoid sanction.  <u>See</u> <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 482 (3d Cir. 1987).

This Court must examine the objective knowledge of the attorney at the time the challenged paper was signed to determine whether the claim was well grounded in both law and fact.  <u>See</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 399 (1990); <u>Teamsters Local Union No. 430 v. Cement Express Inc.</u> ,841 F.2d 66, 68 (3d Cir. 1988).  As the Third Circuit has stated, an attorney must "Stop, Think, Investigate, and Research before filing papers either to initiate a suit or to conduct the litigation."  <u>Gaiardo</u>, 835 F.2d at 482.

Defendants' motion for Rule 11 sanction is denied.  This Court will not equate counsel's actions here with the abject failure to conduct research or the obvious pursuit of abusive litigation.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion for judgment on the pleadings (Docket Entry No. 10), is granted as to the section 1983 claim.  Defendants' request for attorney's fees is denied.  Defendants' motion for sanctions (Docket Entry No. 18) is denied.


 Date: November 13, 2009

                                    S/Joseph A. Greenaway, Jr.
                                   JOSEPH A. GREENAWAY, JR., U.S.D.J.